at all. Gregory Smartwood is here for the appellants. Carrie Leninger is here for State Farm. Mr. Smartwood, you may begin. Good morning. The issue in this case is very simple. The issue in this case is whether my clients, Richard and Anna Spangler, are entitled to coverage for an accident that they had UM coverage as part of that coverage. They had stacking coverage. And the policy includes a number of definitions in the initial part of the policy, one of which is a definition of motor vehicle. Later on in the policy, there's additional definitions in the policy for the uninsured motorist coverage, which is what is at issue here. Initially, State Farm argued in the lower court that the definition in the early part of the policy for motor vehicle applied. The court said that it didn't apply. It only applied to the PIP coverage. And then the secondary argument they had was that even though the uninsured motorist definition of the policy defined uninsured motorist only as a land motor vehicle, State Farm wanted to graft on additional language to that, meaning what they wanted was to look at the statutory scheme in Florida for uninsured motorist coverage, including 324.021, which requires, among other things, that when defining a vehicle, it is a vehicle that is designed and required to be licensed for use upon a highway. So if, in fact, we look at the Florida financial law, this scooter doesn't qualify as a motor vehicle? I hear you, Your Honor. Okay. So the question for us is whether or not the court erred by going beyond the policy itself and that you say the court should have stopped at the policy itself, that it's clear. That's correct, Your Honor. But the judge said the words motor vehicle does not appear in boldface italics in the UM coverage language. And so it was unclear and doesn't the court have the right, if it's unclear what the policy, whether or not the policy has a clear definition of motor vehicle, then he can go ahead and look to the statute. He can look to the statute. He can look at definitions and encyclopedias. I mean, the court can look at other things when it needs to define something that is not plain and clear in the insurance policy. Here the policy, again, there's additional definitions for UM coverage and it says uninsured motorist, uninsured motor vehicle means a land motor vehicle. And here we have an electric scooter, clearly operates on land, clearly driven by a motor and clearly a vehicle. So our position is under the plain terms of the policy that that's what the court should have looked at because that's how the policy defines a land motor vehicle. The court was understandably swayed in part because of two cases, four cases, four Supreme Courts. We want to help define a policy provision similar to this one. But in those cases, in all the cases that we've cited to in the briefs that are dealing with this specific issue, all of those cases are looking to see whether the policy provisions are not providing the minimum amount of coverage that is required under the policy. So in those cases, of course, it makes sense to look at the statute because that Florida financial responsibility law, that statute does provide. Yeah, it would seem odd that there would be an inconsistency though. In other words, it's a qualifying motor vehicle under the policy but not under Florida law. It's a, well that's Cargillo with a Florida Supreme Court case says specifically that insurance companies can provide more coverage than is statutorily required. Essentially what State Farm's argument is, I don't mean to mischaracterize it, I think what their argument is, is that it is impossible for them, State Farm, to provide more coverage than is statutorily required. That's essentially what their argument is, which I think lies directly in the face of the insurance company and Kingsman and some other cases, but Cargillo in particular that says that insurance company can provide more coverage than is statutorily required. So what has happened is the body of case law that's been established on looking at 324.021 is based when courts are looking to see whether a particular provision in the policy is not providing the minimum coverage provided by statute. And in all those cases, some found that it was, some found that it wasn't, but here we've got a policy where the insurance company has afforded Ms. Spangler more coverage than is statutorily required. That's our argument and that's what the policy says. The policy says that benefits will be paid if she is injured in an accident by an uninsured motor vehicle, which this is, that is a land motor vehicle. Clearly it's a land motor vehicle and therefore we can't get it. As you read the term land motor vehicle, would something like a motorized wheelchair be a land motor vehicle? Yes. So anything that has wheels and a motor and rides on the land, is that your definition? It's a vehicle, which means it transports people or items. It's a vehicle, it operates on land and it's got a motor, yes, I think it would be. They could have defined it any way they wanted to. They decided to define it as a land motor vehicle. And in fact, in their policy, they use that phrase, land motor vehicle, in other parts of their policy. For example, in the definition of car, and in the definition of car, they say a car is a four-wheeled vehicle designed to be operated on a public highway. So they understand that if they want, designed and required to be licensed for use in the definition, they know how to put it in there. They put it in there for car. So why wouldn't they put it in here for uninsured motor vehicle? In our position. Oh, I'm sorry. And so your argument, as I understand it, is there has to be a difference between motor vehicle that's defined in the policy and land motor vehicle. It's a different term. Is that right? I hesitate to say that. The terms are almost identical. The reason I keep saying land motor vehicles, because that's how they define uninsured motor vehicle in the policy. When they say uninsured motor vehicle means land motor vehicle. That's the words they're using. That's why I'm focusing so much on those vehicles, on that term. Although, I'll say, in Cargillo, a grant, the Florida Supreme Court cases, the court was, same language, land motor vehicle. The Florida financial statute that they're deriving this, the design and required from, just defines motor vehicle. And so when they were looking at the exclusions, they were looking at, they were almost using motor vehicle and land motor vehicle interchangeably. But the point being, all the cases that are out there that talk about this issue, are talking about, are looking to see whether a policy provides less than the minimum statutory requirement. And if that's the issue before the court, I completely agree, the court should be looking at the statutory scheme to determine whether or not they're offering the minimum coverage. In our case, we agree that they could have excluded land motor vehicle, I mean they could have excluded electric scooters. They could have put that exclusion in there. They could have defined land motor vehicle to mean something else. They could have excluded it. So what we're asking for is just to award her the coverage that she's entitled to, based on the insurance company's language in the insurance policy. And we think the policy is very clear that this is a land motor vehicle. We're insuring land motor vehicles. Under Cargillo, an insurance company can provide additional coverage. And if this language isn't sufficient to award, to give her this coverage, I don't know what language they could put in the policy that would provide this additional coverage. What I didn't understand about the case is that at the very beginning, it says throughout the policy, motor vehicle was defined as, and then the district court discarded that based on whether it was in bold or what, and they didn't cross appeal that. They didn't cross appeal. They didn't cross appeal. I don't know whether they have to cross appeal. They could have said, well, it's the district court's right for an alternative reason. What's the point of saying these definitions apply throughout the policy? That's pretty plain, and then saying, no, they don't apply. What the policy says, and they didn't cross appeal it, and I think they agree that the district court was right on that point, but the reason is because the policy says these And when we use this definition, we're going to put it in bold and we're going to italicize it. Does that, they say bold and italicize in the policy? In the policy. Oh, okay. So that's in the policy. So what happened was, they wanted the court initially, this isn't part of this appeal, but initially they wanted the court to look at this definition that was in bold italics and then to apply it to the non-bold, non-italics land motor vehicle definition. I didn't realize it says that they're going to be printed in bold. I said defined words are printed in boldface, okay, I see. So that's why that went away. Okay, that helps me explain that. My last question is, I always think of UM coverage is for when somebody's driving a car and they don't have insurance or they're underinsured. I've never until this case thought of UM as picking up something, covering a vehicle or truck, scooter, wheelchair, where there's no requirement that the other person have insurance to operate that particular vehicle, whatever you want to call it, moving object. And so that was what was, I think the district court mentioned that. So help me with that. I mean, UM is supposed to pick up something that's supposed to be covered, but they didn't get the coverage. They didn't buy it or they're underinsured. I've never thought of UM as picking up when I buy a UM, even stacking, to say, you know, it's going to cover something where there's no requirement to have coverage. That obviously is a very important point here, Your Honor. But that's, the district court seemed to rely on that point. So I wanted you to help me with why that's irrelevant. It's not irrelevant. I mean, you're right, UM coverage has a minimum amount of coverage and it provides coverage for exactly what you're talking about. It provides coverage for automobiles and, by the way, motorcycles and, you know, so other vehicles that are normally operating on the road. And that's where the design and required to be licensed upon a highway comes in. That's the minimum coverage required per statute. And that's our point, is that what the insurance company must be arguing here. I'm over my time, so can I finish? Go ahead. Okay, thank you. What the insurance company must be arguing is that we can only provide the minimum amount of coverage that is statutorily required. That's what they're, essentially, their argument is. They're saying that we can't provide more coverage than that. My argument is, you can provide more coverage, pursuant to the Florida Supreme Court, Cargillo says specifically they can provide more coverage. And in this case, you did provide more coverage. You provided more coverage by defining uninsured motor vehicle as simply a land motor vehicle. Nothing else to it. They decided to define that term that way. Not my client. My client, this is a contract of adhesion. So they bought that policy saying we have bought UM coverage for a land motor vehicle accident. Okay. Thank you, Your Honor. All right. Ms. Leninger.  Good morning, ma'am. Good morning. Good morning to the court. The appellee, State Farm, requests that this court affirm the well-reasoned decision of the district court below. The district court correctly determined that an uninsured motor vehicle did not include the motorized scooter that was designed exclusively for off-road use. As you all probably know, the Razor scooter is designed with warnings that say this vehicle cannot be operated on the road near other vehicles. It can be operated by a 13-year-old. It has a top speed of 15 miles per hour. It is clear and undisputed that this vehicle was designed exclusively for use off the road. And so we turn to the policy and ask what was the definition of uninsured motor vehicle? And the court correctly noted that uninsured motor vehicle means a land motor vehicle. And that phrase is not defined. It is not in bold, in italics. And the district court below looked to the Florida Supreme Court to say how do we analyze this when we have an undefined term within uninsured motorist coverage. And the Florida Supreme Court has spoken consistently and clearly on this issue. When you have an undefined term in the policy, then the courts must look to the UN statute and the financial responsibility law of the state of Florida. And the financial responsibility law defines motor vehicle as every vehicle that is designed for use on the highway and required to be licensed for use on the highway. What's your response to Mr. Smartwood's argument that that case only pertains to minimal requirements for uninsured motorist coverage? The CARGUILA stands for the proposition that when you have an undefined term in the policy, when you have an undefined term within UN coverage, the courts must look to the financial responsibility law. And his point is that State Farm can, if they choose to, write a policy that is broader in coverage than required by UN. And that's true. The question isn't can State Farm choose to write broader coverage. The question is, did State Farm write broader coverage? All right. And the policy here uses the term land motor vehicle. The case interprets the term motor vehicle. Tell me why the case governs then when we need to look at the plain language of the policy. Because that's what the Florida Supreme Court did. The term in CARGUILA was land motor vehicle. And the issue before the Florida Supreme Court is a certified question with two parts. And the first part is, does this vehicle, a motorcycle, qualify as a motor vehicle under the statute, the Florida Responsibility Law? So this court has to follow the dictates of the Florida Supreme Court. And in deciding what that term meant, the Florida Supreme Court looked to the statute. Let me draw your attention to another provision in the policy that says uninsured motor vehicle does not include a land motor vehicle or trailer designed for use primarily off public roads. That's what you say. But then it says except while on public roads. So doesn't that provision suggest that a land motor vehicle can be a vehicle that's designed for use primarily off the road, but it would be covered if it's on the road? Correct. It would first have to be a land motor vehicle as defined by the Florida statute. So what you first look to is, does that qualify as a motor vehicle? Does the Wazer scooter qualify as a motor vehicle under the Florida statute? And so under the Florida statute, to be a motor vehicle, it has to be designed for use on public roads and it has to be licensed. Neither of those two qualifications are met in this case. But the policy, obviously, whatever it says on the policy, that's what governs, not what the statute says, right? So if there's something in the policy that's different from what, that makes the term different from what's in the statute, we have to look to the policy. You agree with that, right? No, Your Honor, unless it's a defined term in the policy. So a defined term is a term, as Judge Hall was discussing, a defined term is one that is in bold and italics. Land motor vehicle is not a defined term. So what the Florida Supreme Court requires in that circumstance when you are dealing with U.M. coverage is that you have to look at the law, the financial responsibility. All right. Well, let's go back to the provision I was asking you about because it seems to me that your definition renders superfluous or meaningless the except while on public roads. What that means is, for example, a motorcycle that is primarily designed for use off roads, but that means it is capable of being used on public roads. And when that vehicle is on a public road, it's capable of being licensed, then there will be coverage. So when somebody takes their dirt bike and brings it onto a public road, then the state foreign policy will provide coverage if that dirt bike on a public road gets into an accident. But the difference between a dirt bike or a motorcycle designed primarily for off road use and the Razor scooter is that this riding product, this Razor scooter can never be on a public road. It is not capable of being on a public road. It can never be licensed. So it can never meet the definition of a motor vehicle, which this court has to look to because land motor vehicle is not defined in the policy. So could State Farm have in a defined term that covered the Razor scooter? Yes. But did it? No, it did not. It uses the term land motor vehicle. That is an undefined term. And pursuant to the Florida Supreme Court's opinions in Cartaguela and in the Grant case, the courts then look to the financial responsibility law for an explanation of what that term means. You say the Florida Supreme Court has set out what has to happen. Is that Grant v. State Farm? Both Cartaguela and Grant v. State Farm. Cartaguela is more on point because it involved a very similar issue. The issue in Cartaguela was, was the at-fault vehicle a motor vehicle and thus an uninsured motor vehicle? Don't, when there are these types of ambiguities, don't we normally construe the policy in favor of the insured because State Farm wrote this policy? Your Honor, in order for there to be an ambiguity, there has to be more than one reasonable interpretation. And the Florida Supreme Court in Cartaguela and Grant, Grant explicitly says it, but it's a phrase that is used repeatedly throughout Florida cases, is that when you have coverage that is based on statute, the parties presume to incorporate that statute into the policy. In other words, the definition of the statute becomes the definition of the policies. And in this case, like in Cartaguela, land-owner vehicle policy is defined using the definition of a motor vehicle in the Florida Responsibility Law. And then it is very clear, Your Honor, this is, this vehicle was not licensed to be on public roads. It was not designed to be on public roads. Indeed, it was designed to be off public roads. This is not a motor vehicle under the Florida Responsibility Law, therefore it is not a motor vehicle under State Farm's policy. State Farm probably needs to provide that in its policy. Your, State Farm wrote the policy. But, Your Honor, the law doesn't require that. The law says that the parties are presumed to know that the U.M. statute, the U.M. coverage in a policy incorporates the definitions of the U.M. statute in the Florida Responsibility Law. That is what is said repeatedly in the case law. It is said repeatedly by the Florida Supreme Court. And so based on the district court's well-reasoned order below that tracked the analysis of the Florida Supreme Court, we request affirmance. Thank you, Your Honor. Thank you, Ms. Leninger.  Thank you, Your Honor. A couple of things. So one argument that my colleague made was that what the Florida Supreme Court says is that if the term is undefined in the policy, you need to look to the statute. And I agree that that happened in Grant and Cargillo. But that's not what those cases stand for, that you don't have to look at it. And more importantly, what she's focused on is the definition using the bold and italics that Judge Hull was asking me about earlier. So where's the term motor vehicle defined in the policy? It is. If you look at the record, Your Honor, if you look at the policy, it's on page 25 of the policy. It's in my appendix at page 45. What does it say? I'm sorry. 44, Your Honor. And what it says is that in addition to those bold italics definitions in the beginning part of the policy, under uninsured motorist coverage, the first section is called additional definitions. And it defines insured, which isn't applicable here. And it defines uninsured motor vehicle. And this is how it defines it. Uninsured motor vehicle means a land motor vehicle and a trailer attached to such land motor vehicle. That's, so you don't need to look at the statute. It's defined right here in their policy as a land motor vehicle. If they wanted to limit it to land motor vehicles designed and licensed to be insured on a highway, that's what they would have wrote. They didn't. They said it's a land motor vehicle. That's the definition they have in there. I also want to touch on the exclusion. So, so the exclusion provides clearly that, again on the appendix page 45, the exclusion says that a land motor vehicle does not include a land motor vehicle that is designed for use primarily off public roads, which this scooter is, except while on public roads. And in this case, my colleague argued that the scooter was incapable, I think was the word she used, of operating on a, on a public road. We know that's not true because this typically the facts below, the accident occurred in the middle of a highway. So that, the scooter is capable of operating on a public road and in fact was on a public road when this occurred. I don't know that she says it's not capable. Obviously it's capable. What I remember her saying is it was designed for the purpose of being operated off of a public road. And that I agree with 100%. It was. But, but this is what the exclusion says. It's not a public, it does not include a land motor vehicle designed for use primarily off public roads. That's what this scooter is. And there, there's an exception to the exclusion, except while on public roads. I mean the classic example of how this is used, and the case law supports this, are farm tractors. Farm tractors are not meant to be driven on a highway. They're not licensed. They're not, you know, they're, they're probably not insured. But farmers get on highways to go from a field to another field to another field. A dirt bike was the example she used. That's Cargillo. So they, all, those are examples and there's, there's nothing different between a farm tractor, which is not designed to be on a public highway, or a dirt bike, which is not designed to be on a public highway, and this scooter, which is not designed to be on a public highway. And they have provided coverage in the event that those vehicles are operating on, on a public highway. Let me go back to your point about, you're saying in the U.M. coverage section, motor vehicles defined. But actually what's defined is uninsured motor vehicle, means, the bold language is uninsured motor vehicle, means a land motor vehicle and the trailer attached to it. And then it goes into the ownership of this, where it's neither insured, insured, and if you look at 1, 2, A, B, C, under both of them, it's really not defining motor vehicle, it's defining what is an uninsured motor vehicle. That is one plausible way to read that. Correct. I mean, the definition there is the definition of uninsured motor vehicle. The subsections are going to uninsure really then motor vehicle. I think what you're saying is it's not a very good definition. No, I'm saying what is it a definition of? Well, it's whether we come under these Florida Supreme Court cases or not. You say she's wrong. And I think you make a good point. She says when it's not defined in policy. And you say, well, actually, it is defined in the UM coverage. And that's what you point to, right? Okay. But what I'm saying, what is that definition defining? I'm just asking the question to see the answer. I think the definition looks like it's defining uninsured motor vehicle. The focus is on the uninsured. It's not at all talking about what a motor vehicle is. And that's where you disagree. Yeah, yeah. So my point is, it says uninsured, it is defining uninsured motor vehicle. I think that's what you were saying. And the next word means, that is defining it as a land motor vehicle. I agree with you that it gives that broad term. And then the contracting language underneath it all deals with the insurability stuff. Yeah, right. Exactly. It's not fully defining what a motor vehicle is in any form. Right. So it's really what is the import of this definition. Right, right. Thank you, counsel. Court is adjourned. All rise.